# Pocket Veto Clause

The wording of the Pocket Veto Clause of the Constitution that a bill shall not become law if "the Congress by their Adjournment prevent its Return" by the President — expresses the assumption that adjournments ordinarily make the return of a bill impossible, but the clear structural rule established by the Clause applies to all adjournments in the constitutional sense, even if Congress has taken measures to make the return of a bill possible.

The drafting history of the Pocket Veto Clause shows an intent to avoid excessive periods of uncertainty about the fate of bills passed by Congress.

Ordinary legislation expressing Congress' view about the category of adjournments covered by the Pocket Veto Clause is inappropriate, because such legislation cannot change the meaning of the constitutional terms.

Presidents Ford and Carter may have purported to return bills that, under the Constitution, could only be pocket vetoed. Thus, the bills they believed they had return-vetoed may in fact have been pocket-vetoed instead. As far as we know, however, this has no practical effect.

Congress can avoid application of the Pocket Veto Clause during brief adjournments by scheduling presentment of bills so that the tenth day after presentment does not fall during an adjournment of either House that is longer than three days.

May 17, 1990

LETTER FOR A MEMBER OF THE HOUSE OF REPRESENTATIVES

The Department very much appreciates your interest in the Pocket Veto Clause. As I indicated at the hearing on last Wednesday, I would like to present more detailed answers to your thoughtful questions.

Your first question concerned the text of the clause, which provides that a bill becomes a law without the President's signature if he has not returned it to Congress with his objections after ten days (Sundays excepted) "unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a law." U.S. Const. art. I, § 7, cl. 2. Our position, as you know, is that all adjournments of Congress in the constitutional sense prevent the return of a bill. Your question was whether that is a natural reading of the

103

text; in particular, you asked whether if the Framers meant to say that they would simply have said "unless the Congress adjourn."

We think that the formulation that appears in the Constitution is a very natural way to express our understanding. In drafting the Pocket Veto Clause, the Federal Convention was primarily concerned with the situation in which Congress had made return impossible.[1] Adjournment was significant as the reason that return was impossible. If a drafter is referring to a particular cause but is principally interested in its effect, it is quite natural to refer to both together; indeed, it would be unnatural and confusing to refer only to the cause and not to mention the effect, where the effect is the primary concern. For example, consider a veterans benefit program open to all former service members except those who have lost their American citizenship through expatriation. One might refer to such persons as those who have been expatriated, but it is more informative and more natural to include the reference to loss of citizenship, because that is the reason expatriation is significant in this context.[2]

In addition, if a speaker presupposes that one event necessarily entails a consequence, it is quite normal to include that presupposition in the expression. Thus, in the example I gave at the hearings, a legal rule might require a husband to notify his wife of something, unless her death prevents the notification. The fact that the rule is phrased that way, and does not say that the husband must notify his wife unless she dies, would not lead us to imagine instances in which death might not prevent notification.

Moreover, our understanding of the text accords with the expectation that the Framers, in drafting the structural provisions of the Constitution, sought to establish brightline rules that are capable of mechanical application. *See INS v. Chadha,* 462 U.S. 919, 945 (1983). Clarity is all-important with respect to the law-making process itself. We think it unlikely that the Framers drafted an open-ended provision that would invite debate as to whether an adjournment was of the kind that prevents a return or not. On the contrary, their principles of Constitution writing require clearer rules than that, and our reading makes the Pocket Veto Clause clear and mechanical.

Next, you suggested a possible response to our argument based on the drafting history of the Pocket Veto Clause. We pointed out that the Committee on Detail of the Federal Convention considered a version of the clause under which, if Congress had adjourned after presenting a bill, the President would hold the bill until the next session of Congress. The Committee, however, rejected that form of the rule in favor of the Pocket Veto Clause as it appears in the Constitution. We suggest that this indicates that the Federal

---

[1] As we explain, that concern arose both because Congress might thereby seek to circumvent the veto and because if return is impossible so is prompt reconsideration.

[2] This reading is entirely consistent with the maxim that all the words of a text should have meaning. In our view, the Convention referred to both adjournment and prevention of return for greater clarity, not in order to limit the class of adjournments to which the Pocket Veto Clause applies. The maxim does not operate to require that drafters be as laconic as possible.

Convention was concerned, not only with the possibility that Congress might seek to evade the President's veto by passing laws and then adjourning, but also with excessive periods of uncertainty concerning the fate of a vetoed bill.[3] You suggest that the Convention may instead have wanted to avoid the situation in which one Congress passes a bill and the next Congress, with different personnel, decides whether to override the President's veto.

While that is a possible explanation of the Committee's decision, we think it less plausible than the one we suggest. The Constitution as the Convention approved it permits one Congress to override a veto that the President returned to the preceding Congress. If one Congress ends within ten days of the date on which the next Congress convenes, the President may return the bill with his objections to the new Congress, which then could conduct an override vote. This is not just a hypothetical possibility. In 1983, the 98th Congress convened less than ten days after the sine die adjournment of the 97th Congress; in a more extreme case, the 39th Congress adjourned sine die the morning of March 4, 1867, and the 40th Congress convened that afternoon. Had the Committee been concerned with this problem when they were drafting Article I, Section 7, they would have dealt with it in its primary manifestation as well as in the context of the pocket veto.

Third, you suggested that legislation such as H.R. 849, 101st Cong., 1st Sess. (1989), may be appropriate as a vindication of Congress' view of the Constitution. We agree wholeheartedly that all three branches have obligations to the Constitution and must interpret it in order to perform their functions. Naturally, Members of Congress should base their votes on their understanding of the Constitution. H.R. 849, however, is not an exercise of Congress' legislative power in the ordinary sense. The part of the bill to which we object is a pure statement of a proposition of constitutional interpretation that can have no independent legal effect: whether any adjournment or class of adjournments prevents the return of a bill depends on the meaning of the Pocket Veto Clause, and that meaning cannot be changed by ordinary legislation. Thus, the bill is a statement of congressional position rather than an actual legal rule. For that reason, we think it inappropriate for Congress to attempt to embody its view in a statute, thereby asking the President's assent to a legal conclusion with which he disagrees.

You also asked whether our interpretation of the Pocket Veto Clause undermines the accord that was reached under Presidents Ford and Carter, and indeed suggests that many bills may have become laws contrary to the understanding of President and Congress. As we understand it, the practice under Presidents Ford and Carter was to proceed as if the Pocket Veto Clause was applicable only after sine die adjournments of Congress, and to employ return vetoes in all other circumstances.

---

[3] Moreover, as you know, the Supreme Court has also stated that the opportunity for prompt reconsideration of a bill is one of the purposes of the Pocket Veto Clause. *The Pocket Veto Case*, 279 U.S. 655, 684-85 (1929).

Congress and the President cannot change the meaning of the Pocket Veto Clause by an understanding between themselves, and if they proceed on an incorrect premise as to the applicable constitutional rules their actions may not have the consequences they anticipate. When Congress is adjourned within the meaning of the Pocket Veto Clause on the tenth day after a bill has been presented, that bill is pocket vetoed unless the President signs it. Because the pocket veto operates automatically and not through any action of the President, this is true even if the President returns the bill to Congress in what he believes to be a return veto. The President cannot choose whether to use a return veto or a pocket veto; by definition, the Pocket Veto Clause operates only when a return veto is impossible. Moreover, the President's views as to the operation of the pocket veto do not affect the meaning of the Constitution. Therefore, if the position we take is correct, it is correct whether or not we take it, and the fact that the Department has espoused a particular reading of the Pocket Veto Clause will not effect the validity of any statute.

As a consequence, some bills that Presidents Ford and Carter believed they had return-vetoed may in fact have been pocket-vetoed instead. As far as we know, however, this has no practical effect. The only difference between a return veto and a pocket veto is that a return veto is subject to override. We know of no bill that ostensibly became a law through an override of a supposed return veto that under our reading of the Constitution was in fact a pocket veto.[4]

Finally, I would like to expand on what appears to have been some confusion during the hearing on the practical implications of our position for brief adjournments of Congress.

The Court explained in *Wright v. United States*, 302 U.S. 583 (1938), that Congress, considered as a bicameral body, is adjourned whenever either House is adjourned for more than three days. This does not mean, however, that a bill will be subject to the Pocket Veto Clause whenever Congress takes a brief adjournment while the bill is pending before the President. Rather, the pocket veto operates only if the *tenth day* after presentment falls during an adjournment. This is true because, once again, the pocket veto is not a power of the President that he exercises affirmatively. Rather, pocket vetoes happen automatically on the tenth day after presentment if the President has not signed the bill. Thus, the Court's reading of the Adjournment Clause requires, at most, attention to the scheduling of presentments, so that the tenth day after presentment does not fall during an adjournment of either House that is longer than three days.

JOHN O. McGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[4] In addition, if Presidents Ford and Carter proceeded on an incorrect understanding of the Pocket Veto Clause, it is possible that bills may have been pocket vetoed when the President thought that they had become law without his signature. We know of no such instances, however.